IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EASEMENTS TO CONSTRUCT, ) <br> OPERATE, AND MAINTAIN A ) <br> NATURAL GAS PIPELINE OVER ) <br> TRACTS OF LAND IN GILES COUNTY, ) <br> CRAIG COUNTY, MONTGOMERY ) <br> COUNTY, ROANOKE COUNTY, ) <br> FRANKLIN COUNTY, AND ) <br> PITTSYLVANIA COUNTY, VIRGINIA, *et* ) <br> *al.*, ) <br> ) <br>     Defendants. ) | Civil Action No. 7:17-cv-00492 <br><br> By: Elizabeth K. Dillon <br>      United States District Judge |

**MEMORANDUM OPINION AND ORDER**

By opinion and order entered January 31, 2018, the court conditionally granted plaintiff Mountain Valley Pipeline, LLC's (MVP) motion for immediate possession. As to nine properties for which the court had appraisals, MVP was directed to comply with the court's directives regarding posting security and providing draft orders granting immediate possession, which it has now done. The deadline for filing objections to the last of those orders, and all other orders submitted by MVP as to all properties, is March 2, 2018. By separate order, the court will address any objections to MVP's proposed orders.

As to the Remaining Properties (which term the court uses in this order to mean all of the properties named in the amended complaint, except for the nine and except for any properties that have been dismissed), the court's order was "conditioned on MVP's first presenting sufficient additional evidence that satisfies the constitutional requirements" referenced in the

1

court's memorandum opinion. (Dkt. No. 140 at 5.) In an attempt to satisfy this condition, MVP has submitted, on a rolling basis, appraisals of all of the Remaining Properties. The court permitted defendants to file responses to those appraisals, and objections have been filed relating to nearly all of the appraisals. MVP has also filed a response to many of the objections (Dkt. No. 468), and defendants filed a reply (Dkt. No. 478). The court has reviewed and considered all of the submissions.

The appraisals submitted by MVP were prepared and signed by appraisers from the same firm, Miller, Long, & Associates, that prepared the first nine appraisals accepted by the court as satisfactory to meet constitutional mandates, when coupled with the multiplier applied by the court. Defendants acknowledge this fact, but they contend that the appraisals here "stand in stark contrast" to (*see, e.g.*, Dkt. No. 425 at 3), and are even less thorough than, those first nine appraisals, which defendants also challenged. They repeatedly assert that the appraisals are so unreliable that the court cannot rely on them to conclude that there is "reasonable, certain, and adequate provision" for the landowners to obtain compensation, *Cherokee Nation v. S. Kansas Ry. Co.*, 135 U.S. 641, 659 (1890), or to set adequate security.

Defendants object to the appraisals on numerous grounds, including that the appraisers failed to inspect properties, to value improvements, and to consult with landowners. They also contend that the appraisals failed to value the entire property before and the entire residue after the proposed acquisition, which MVP acknowledged in its discovery responses is the proper way to calculate just compensation in this federal condemnation proceeding. They point out that the appraisals themselves state they are not intended for litigation use and thus should not be used. They further claim that the appraisals do not meet the requirements of the *Uniform Standards of Professional Appraisal Practice*, The Appraisal Foundation (2018–2019), or the Uniform

2

Standards for Federal Land Acquisitions, also known as the Yellow Book, and that the appraisers did not follow the policies set forth in 42 U.S.C. § 4651. As to a number of properties, they object on the grounds that the appraiser failed to do a proper "highest and best use analysis" for the site, or failed to undertake an appropriate "larger parcel" or "unity of use" analysis. They also assert that many of the appraisals, which by all accounts were hastily prepared, are riddled with errors that make them so unreliable that the court cannot consider them. Numerous defendants have pointed out specific errors in the appraisals relating to their specific property. These include, for example, supposed errors in acreage and zoning, inconsistencies within the reports regarding whether and from where a property was viewed, incorrect descriptions of features of the property, and a failure to use proper comparable sales.[1]

Similar to the response to the first nine appraisals, none of the defendants offer their own appraisals. A small group of property owners offer an alternative measure of value, but those values are merely bald assertions—for the most part, there is no explanation as to how they were reached or upon what those figures were based. (*See* Dkt. Nos. 421, 427–31, 434, 439–40, 442, 444–45, 470–72, 451–55, 457–60, 467, 474, 475.) Thus, the court will not use those offered amounts to set security here. Of course, at the just compensation phase of this case, the landowners may present whatever evidence they believe is relevant to establishing the final amount of just compensation.

The court has carefully reviewed the objections to the appraisals, and at least some of them appear to be well-founded. Indeed, the court shares the defendants' concerns that there are certain appraisals with significant errors that likely led to an inaccurate appraisal amount. But the court cannot say that the appraisals are so inherently unreliable that they cannot be used, in

---

[1] The court addressed, and rejected in a prior order, defendants' request that they be allowed to depose or cross examine MVP's appraisers before the court ruled on the adequacy of security. (*See* Dkt. No. 387).

conjunction with the court's multiplier, to provide adequate assurances that just compensation will be made at the conclusion of the case. *See Cherokee Nation*, 135 U.S. at 659.

Now is not the time to determine the precise amount of just compensation or to determine with certainty the accuracy of MVP's estimated amounts; that must be done after any desired discovery and a trial or other proceeding at which both MVP and the affected landowner for each easement may present evidence as to the proper amount of just compensation. The court simply cannot determine a precise or 100% accurate figure for just compensation on the record before it, nor is it required to do so in order to find *Cherokee Nation* satisfied. Instead, MVP need only present evidence from which the court can be satisfied that an adequate process is in place to assure that the landowners will receive just compensation at the conclusion of the case. *Mountain Valley Pipeline, LLC v. An Easement to Construct, Operate and Maintain a 42-Inch Gas Transmission Line*, No. 2:17-cv-04214, 2018 WL 1004745, at *12 (S.D.W. Va. Feb. 21, 2018) (describing the information before it as sufficient because "the court has a baseline against which to properly fix the amount of the deposit that Mountain Valley must provide prior to taking possession"); *Mountain Valley Pipeline, LLC v. Simmons*, No. 1:17-cv-211, 2018 WL 701297, at *10 (N.D.W. Va. Feb. 2, 2018) (noting that "[w]ithout the benefit of a trial on just compensation, it is impossible for the Court to fix the bond at precisely the correct amount"). As another judge dealing with a different part of MVP's pipeline noted in response to similar arguments: "The landowners would have just compensation fully litigated prior to the issuance of the preliminary injunction. Of course, doing so would defeat the purpose of immediate relief." *Mountain Valley Pipeline, LLC v. An Easement to Construct, Operate and Maintain a 42-Inch Gas Transmission Line,* No. 2:17-cv-04214, 2018 WL 1004745, at *11.

Just as this court did with the first nine properties, this court is not requiring a deposit of *only* the appraised amounts. Instead, the court will require security in the amount of five times MVP's appraised values, in the form of three times the value for a deposit and two times the value for a bond. Furthermore, the court has required for the first nine properties, and will require for the Remaining Properties, that each bond be conditioned on MVP's payment of just compensation on all properties. This, coupled with the multiplier imposed by the court, is sufficient to assure just compensation and satisfy the mandates of *Cherokee Nation*. *See, e.g.*, *Columbia Gas Transmission, LLC v. 252.071 Acres More or Less*, No. 15-cv-3462, 2016 WL 1248670, at *18–19 (D. Md. Mar. 25, 2016) (requiring both a deposit and a bond to ensure sufficient security); *Tex. E. Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14-cv-2650(L), 2015 WL 152680, at *8 (S.D. Ohio Jan. 12, 2015) (same); *N. Nat. Gas Co. v. Approximately 9117.53 Acres*, No. 10-cv-1232, 2012 WL 859728, at *10–11, 14 (D. Kan. Mar. 13, 2012) (same).

It is worth noting that the other two courts presiding over MVP's condemnation proceedings have also accepted appraisals challenged on similar grounds, used them as a baseline amount for security, and then ordered a multiplier to assure just compensation. *See Mountain Valley Pipeline, LLC v. An Easement to Construct, Operate, and Maintain 42-Inch Gas Transmission Line*, No. 2:17-cv-04214, 2018 WL 1004745, at *11–12 (requiring four times MVP's appraised amount as a deposit and a bond in two times the appraised amount because the court was not "satisfied" with the estimation amount and did not believe that a deposit of only that amount would ensure that just compensation would be paid); *Mountain Valley Pipeline, LLC v. Simmons*, No. 1:17-cv-211, 2018 WL 701297, at *10, 19–20 (concluding that the same multiplier as the court is imposing here fully protected against any deficiencies in the appraisals).

In *Sage*, the court noted that adequate assurance of just compensation also included the fact that, if the security were short, the pipeline company would "be able to make up the difference" and could be sued by any aggrieved parties. *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 824 (4th Cir. 2004). Here, although the court has no information about MVP's financial strength because it upheld MVP's objections to providing that information in discovery, there is some information in the record supporting MVP's contention that the defendants will be able to recover from them any deficiency. Specifically, the MVP Project has a total budget of $3.7 billion (Day 1 Hr'g Tr. 141, Dkt. No. 300), and FERC has concluded that MVP is "prepared to financially support the project." (Dkt. No. 1-1, at 12.) This is some additional assurance that there will be sufficient assets to ensure the landowners receive just compensation.

For the reasons set forth above, the objections filed by defendants are hereby OVERRULED WITHOUT PREJUDICE to their ability to challenge the appraisals at the just compensation phase of the case, and MVP's motion for immediate possession is GRANTED upon the posting of the required security and the court's entry of separate orders as to each property.

Upon posting of the security ordered herein, the court will enter an order as to each property granting such possession. The court notes that MVP has already submitted proposed orders granting MVP the immediate right of entry for each of the properties as to the easements in the amended complaint.

It is further ORDERED as follows:

1. MVP must deposit with the clerk of court a certified check in an amount of three times the appraised amount for each of the Remaining Properties referenced in the complaint, and shall set the appraised amount at $3,001 for any property

appraised for less than $3,000. The deposit is made pursuant to Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(1), and Local Rule 67.

2. MVP shall obtain and post a certified surety bond in the total amount of two times the appraised amount for each of the Remaining Properties. The bond shall be conditioned on MVP's payment of any and all final compensation damages awarded in excess of the deposited amount, and if such payments are made, then the bond shall be null and void upon full payment having been made as to all of the properties.

3. The deposit, the bond amount, or the two combined, shall not be construed as any indication of the floor or ceiling of the ultimate amount of just compensation, if any, to which any interest-holder is entitled. Instead, the eventual compensation award by this court, a jury, or a compensation commission may be lower, higher, or the same as the amount MVP is required to provide as security.

4. MVP shall remit the deposit amounts to the clerk of the court for deposit into the registry of this court. The clerk shall deposit the amounts received into the registry of this court and then, as soon as the business of the clerk's office allows, the clerk shall deposit these funds into the interest-bearing Court Registry Investment System (C.R.I.S.) administered by the Administrative Office of the United States Courts as Custodian, pursuant to Federal Rule of Civil Procedure 67 and Local Rule 67.

5. MVP has already filed a chart, similar to that required by the court in its January 31, 2018 order at ¶ 6f. That chart was to be broken down by easement and identify: (i) each appraised property for which funds are being deposited; (ii) the

corresponding MVP parcel numbers; (iii) the corresponding paragraph numbers in the amended complaint; (iv) the total amount of the appraisal; (v) the amount of the deposit for that specific property (which will be three times the appraised amount); (vi) the amount of the bond that relates to that specific property (which will be two times the appraised amount); and (vii) all persons or entities who own an interest in the property and the percentage of each person's interest. If any party disputes the accuracy of any information in the chart, he shall file an objection not later than seven days after entry of this order. Although these objections may result in modifications to deposits, any errors or discrepancies in the chart do not prevent MVP from obtaining immediate possession of the Remaining Properties. The court can address such objections, if any, as part of a separate process.

6. Additionally, all parties—including MVP and any defendants who have an interest in any of the deposited funds—have a continuing duty, until the conclusion of all proceedings, to advise the court if the information in any filed chart changes. This includes, in particular, a duty to advise the court if there is any change for any parcel as to the number of owners or the percentages of their ownership interests.

7. Pursuant to Federal Rule of Civil Procedure 71.1(j)(2), the deposit of any funds for an identified defendant's property shall constitute MVP's agreement that the interest-holder can access up to the base amount of the appraisal, *i.e.*, up to one-third of the deposited amount, with the understanding that such withdrawal is at the landowner's peril. **Thus, all defendants are hereby advised that, if the**

**ultimate compensation award is less than the amount withdrawn, the interest-holder will be liable for the return of the excess with appropriate interest.** If multiple defendants claim an interest in any of the easements, each defendant claiming an interest can withdraw only its proportionate share of the funds identified for that easement and attributable to its claimed interest.

8. Each of the defendants who owns or claims an interest in any particular property shall be entitled to draw from one-third of the funds deposited by MVP with the clerk of the court its ownership share of the amount of estimated just compensation deposited by MVP, subject to the warnings above, and provided that each such defendant satisfies all conditions of this order and any other court order. Furthermore, defendants shall be entitled to interest calculated pursuant to 28 U.S.C. § 1961 from and after the date of entry of this order on the difference between the principal amount deposited with the court by MVP and the amount of just compensation determined by the court, if any, if such determination of just compensation to be paid exceeds the amount deposited by MVP.

9. A defendant who wants to draw on the deposited funds shall file a motion for disbursement of funds with the court and shall include a certificate of service showing that he served the motion on all other persons with a property interest in the same parcel or easement, if any. Any person objecting to the disbursement shall have fourteen days to file a written objection with the court. The court will then resolve any objections and issue an order on the withdrawal request. If there are no other persons with an interest in that property, disbursement will be

permitted only by a separate order of the court, but the fourteen-day period for objections will not apply.

It is further ORDERED that the parties shall confer and propose to the court an appropriate litigation schedule and method to resolve the remaining issues of just compensation. Such schedule shall be provided not later than March 31, 2018.

The clerk is directed to mail a copy of this memorandum opinion and order to all counsel of record, all *pro se* parties who have appeared, and all defendants who have been personally served and not yet appeared.

Entered: March 2, 2018.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge