IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:17-cv-00492 |
| ) | |
| EASEMENTS TO CONSTRUCT, ) | By: Elizabeth K. Dillon |
| OPERATE, AND MAINTAIN A ) | United States District Judge |
| NATURAL GAS PIPELINE OVER ) | |
| TRACTS OF LAND IN GILES COUNTY, ) | |
| CRAIG COUNTY, MONTGOMERY ) | |
| COUNTY, ROANOKE COUNTY, ) | |
| FRANKLIN COUNTY, AND ) | |
| PITTSYLVANIA COUNTY, VIRGINIA, *et* ) | |
| *al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION ON CROSS-MOTIONS FOR CONTEMPT

On April 20, 2018, Mountain Valley Pipeline (MVP) filed a verified motion asking the court to enforce a prior order and to hold in contempt John Coles Terry III (Coles), who is an owner of two parcels of land, MVP Parcel Nos. VA-RO-45 and VA-RO-046, that are part of this condemnation proceeding.[1] (Dkt. No. 790.) The motion also asks the court to hold in contempt Coles' wife, Theresa Ellen "Red" Terry (Red), and his daughter, Theresa Minor Terry (Minor). (*Id.* at 6–7.) As all parties agree, Red and Minor are occupying tree stands on the parcels that are within the path of the easements over which MVP has been granted immediate possession by this

---

[1] The other two owners of the second parcel, Frank H. Terry, Jr. and Elizabeth Lee Terry, were named in MVP's motion for contempt. The parties subsequently agreed that they should be dismissed without prejudice as to both MVP's contempt motion and for purposes of the Terrys' cross-motion for contempt. The court granted that oral request, subject to the parties' agreed condition that those two landowners will not interfere with or contest any order resulting from the contempt proceedings.

court (Easements).[2]  In its verified motion, MVP alleges that Coles, Red, and Minor are in contempt of the court's March 7, 2008 orders granting MVP possession of the Easements, which precluded landowners from interfering with MVP's use of and access to the Easements.  It asks that the court impose measures designed to coerce compliance with that measure and, if necessary, to have Red and Minor removed from the tree stands so that it may continue its activities on the Easements.

Upon receipt and review of the motion for contempt, the court issued an order to show cause, setting the motion for a May 1, 2018 hearing and directing all three Terrys to appear.  Coles appeared for the hearing, and all three Terrys were represented by the same counsel.  Although it is undisputed that Red and Minor had actual notice of the motion and the order to show cause, they did not come down from their respective tree stands, and they were not present at the hearing.

The Terrys' written response to the motion for contempt includes a cross-motion asking the court to hold MVP in contempt.  (Dkt. No. 830.)  In it, they assert that MVP is prohibited by the court's prior orders from felling trees after March 31, 2018, and thus that it is MVP who is violating the court's orders.  They rely on the same basic theory as a defense to the contempt motion against them, among other arguments.  The Terrys' suggested remedy is for the court to prevent MVP from engaging in all tree-felling until November 2018.

At a brief status conference held the day before the hearing, MVP agreed that it could be prepared to present evidence and argument on the cross-motion at the same May 1, 2018 hearing already set for its motion.  (Dkt. No. 835.)  MVP also filed a written opposition to the motion

---

[2] According to undisputed testimony at the hearing, Red is on VA-RO-046 and Minor is on VA-RO-045.  There is a third tree stand on the Terry parcels, but it is out of the limits of the Easements and not at issue in these motions.

shortly before the hearing. (Dkt. No. 836.) Thus, in a hearing lasting more than four hours, the court received evidence and heard argument on both motions, which are now ripe for disposition.

For the reasons set forth herein, the court will deny the Terrys' motion for contempt and will grant MVP's motion and find Coles, Red, and Minor in contempt. The court will impose sanctions on all three of them: on Coles in an attempt to partially compensate MVP for his violations, and on Red and Minor in an attempt to coerce their compliance with the court's prior order.

I. FACTUAL BACKGROUND[3]

In October 2017, after a years-long process of reviewing MVP's application and receiving public comments, the Federal Energy Regulatory Commission (FERC) granted a certificate giving MVP the right to condemn the Easements under the Natural Gas Act. MVP then filed this condemnation suit, seeking to condemn all Easements along the FERC-approved path for the pipeline. On January 31, 2018, the court granted MVP's motion for partial summary judgment, concluding that the FERC order gave MVP the right to condemn Easements on the land parcels along the approved route of its pipeline, which included the Easements on the two Terry parcels. (Dkt. Nos. 339, 340.) The court also determined that MVP was entitled to immediate possession of the parcels before the completion of condemnation proceedings in this case. Thus, after MVP posted the security required by the court, the court entered orders granting immediate possession of the Easements to MVP. (Dkt. Nos. 592, 593.)

Both of those orders included the following language, which MVP alleges in its motion that the Terrys have violated:

---

[3] Because the legal background of this condemnation case has been discussed extensively in other opinions and orders, the court recites only that background pertinent to the contempt motions.

> It is further ORDERED that defendants and their agents, servants,
> employees, and those in active concert and participation with them,
> are prohibited from delaying, obstructing, or interfering with
> access to or use of the Easements by MVP or its agents, servants,
> employees, or contractors.

(Dkt. Nos. 592, 593.)

After obtaining immediate possession, MVP began tree-felling along the pipeline route, including tree-felling by hand on both Terry properties. Since April 2, 2018, and April 3, 2018, respectively, Red and Minor have been in the tree stands continuously.[4] They remained there through the time of the May 1, 2018 hearing, and no one has advised the court that they have since vacated the tree stands.

MVP's contractors were tree-felling on both parcels on April 12, 2018, but they did not cut trees in the immediate areas of the tree stands because of the obvious danger to Minor and Red. Instead, MVP contacted the Roanoke County Police. According to briefing in the case, both Red and Minor have been charged with misdemeanor trespass and other misdemeanor offenses in Roanoke County. Although warrants have been issued for their arrests, they have steadfastly refused to come down from their tree stands. Subsequent to the issuance of the warrants, the Roanoke County Police have maintained a presence at the base of the tree stands and set up a security perimeter that keeps others from delivering supplies or other materials to Red or Minor. It appears that the police may be waiting to execute the warrants until the women voluntarily come down from their tree stands, and the police have been sending up food and water to Red and Minor since their supplies ran out. After continued refusals by Minor and Red to vacate the tree stands and allow MVP to continue its activities, MVP filed its contempt motion.

---

[4] At the hearing, there was also credible testimony from one of MVP's security officers that Red had been in the tree stand at some point in March, had come down for Easter (which was April 1, 2018), and then had gone back up.

4

Additional facts relevant to both motions will be discussed in the context of analyzing the motions for contempt.

## II. DISCUSSION

MVP contends that it has been harmed and delayed in its ability to fell trees on the Easements located on the Terry properties as a result of the occupancy of the tree stands, and it requests that the court hold all three Terrys in contempt. The Terrys, for their part, argue that it is MVP who is in violation of the court's prior order. They contend that MVP has violated the court's January 31, 2018 memorandum opinion and order by continuing to fell trees after March 31, 2018, which they say is inconsistent with representations MVP made to the court to obtain that order. After discussing the applicable legal standards, the court will address the Terrys' motion first and then will turn to MVP's motion.

### A. Standards for Civil Contempt[5]

In order to find a person in civil contempt, the person moving for a contempt finding must prove each of the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
>
> (2) that the decree was in the movant's "favor";
>
> (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and
>
> (4) that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citation omitted).

---

[5] As the court noted in its order to show cause, the contempt proceedings and the sanctions the court imposes are designed to compensate MVP and/or obtain compliance with the court's prior order, not to punish. Because their purpose is not punishment, they are civil in nature. (Dkt. No. 812 at 2–3.)

The Fourth Circuit has also held that "the plain language of [Federal Rule of Civil Procedure 65] establishes the principle that a court, in the exercise of its equitable powers, may hold in contempt those who act in concert with named parties to frustrate an injunctive decree or to avoid compliance with it. The principle is confirmed by precedent." *E.E.O.C v. Int'l Longshoremen's Assoc.*, 541 F.2d 1062, 1064 n.1 (4th Cir. 1976) (citing *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945), *Thaxton v. Vaughan*, 321 F.2d 474 (4th Cir. 1963), *Day Companies v. Patat*, 440 F.2d 1343 (5th Cir. 1971), and *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930)). Thus, the mere fact that Red and Minor are not parties to the underlying suit or injunction does not protect them from being held in contempt.[6]

The parties stipulated that Coles, Red, and Minor all received actual notice of MVP's motion and the court's order to show cause, which set the matter for a hearing. Additionally, MVP received notice of the Terrys' cross-motion for contempt and had the opportunity to file a written response (albeit in a very brief amount of time) and to argue its merits at the hearing. Thus, the court concludes that all three Terrys and MVP had adequate notice of the possibility that they might be found in contempt and had an opportunity to be heard, despite Red's and Minor's failure to appear except through counsel.

**B. Contempt Motion Against MVP**

The Terrys' theory of MVP's contempt is that "[a]ny tree felling by MVP after March 31, 2018, directly violates the plain language of this Court's opinion and orders." (Dkt. No. 830 at 5.) They point to the court's factual recitations in its January 31, 2018 memorandum opinion (incorporated by reference in its order of the same date) and to the following language in the

---

[6] The Terrys do not dispute this principle generally, but they contend that Minor and Red cannot be held in contempt unless and until the court finds a party to the injunction in contempt, and the court finds that they have aided and abetted that party in violating the injunction. Given the court's conclusion herein that both of these predicates are satisfied (*i.e.*, the court finds herein that Coles has violated the injunction and that both Minor and Red have acted in concert with him in doing so), this argument is moot.

6

March 7, 2018 orders granting immediate possession: "Landowners may fully use and enjoy the premises to the extent that such use and enjoyment does not interfere with or obstruct MVP's rights described herein."  (Dkt. Nos. 592, 593.)

The Terrys' cross-motion[7] to hold MVP in contempt fails because the Terrys have not put forth clear and convincing evidence sufficient to establish all four elements of contempt. Further, the legal arguments they advance do not convince the court—clearly or otherwise—that MVP is in contempt of the court's orders.

Turning to the contempt elements, the parties agree, and the court so finds, that the court's orders are valid decrees and that MVP had notice of them.  So, the first element is established.

As to the second element, the Terrys argue that the order is in their favor because it notes their right to enjoy their property.  Although the order reserves to the landowners the right to use their land so long as they do not interfere with or obstruct the broad grant to MVP, the court cannot find—and certainly not by clear and convincing evidence—that this reservation of rights means the order is in the Terrys' favor.   Instead, the court concludes that neither the January 31, 2018 memorandum opinion and order, nor the ultimate orders awarding immediate possession, can be construed as being "in favor" of the landowners or of Red and Minor.  Notably, the Terrys and many other landowner defendants, through counsel, expended tremendous effort and time in opposing the result in all of those court decrees.  In combination, those orders granted to MVP immediate possession and the right to begin clearing trees and to begin construction on the pipeline, consistent with FERC requirements.  That result was not in the Terrys' favor. Furthermore, the reservation of rights provision on which the Terrys rely was not entered or

---

[7] Although Coles is the only "landowner" bringing the contempt motion, the motion is purportedly brought on behalf of Red and Minor, as well.  Thus, the court refers to it as the Terrys' motion.

7

included over MVP's objection; indeed, MVP never asked the court to deprive landowners of these rights.

Even if that one paragraph could somehow render the order in favor of the landowners, the Terrys have not shown the third element—that MVP is in violation of that order or the court's prior orders. In particular, they do not point to a specific provision in any order in which the court prohibited MVP from tree-felling in any area after March 31, 2018. Indeed, nothing in any of the court's orders explicitly—or implicitly—requires that tree-felling begin or end on a certain date. Accordingly, the court finds that the Terrys have failed to show that MVP's tree-felling after March 31, 2018, constituted a violation of any term of the court's decree.

The Terrys argue, though, that allegedly misleading or false information given by MVP, which was repeated in the court's January 31, 2018 memorandum opinion, results in such a restriction. That is, they allege that MVP provided testimony, relied upon by the court to grant MVP immediate possession, that it could not fell in certain areas after March 31 due to the restrictions to protect bats and a "current" inability to "mist-net or catch the bats." Then, they allege that MVP subsequently told FERC it could fell in a much larger area after that date because there were no bats to protect. At the hearing, the Terrys' counsel suggested that MVP either mistakenly or intentionally misled the court. He then claimed that because the court relied on that incorrect assertion and referenced it in its opinion, any tree-felling after that date violated the court's order.

But this argument is based on an incomplete reading of the testimony at the January hearing. The Terrys allege that MVP told the court that nearly all of the tree-felling had to be completed by March 31, 2018. They claim that Robert Cooper, the project manager, testified that there were 75 miles of pipeline subject to the bat restrictions and that MVP could not fell

8

trees along those 75 miles after March 31, 2018. (Dkt. No. 830.) The court's opinion certainly did not recite the entirety of Mr. Cooper's testimony, and the Terrys are inaccurately describing that testimony.

MVP's witness, Mr. Cooper, testified that there were close to 20 miles of pipeline that "are definitely within the bat window," but that "based upon the portals [*i.e.*, potential bat hibernation sites] that we haven't surveyed, that could expand to about 75 miles." (Day 1 Hr'g Tr. 123.) Based on this testimony, the court noted in its opinion that tree clearing was limited to the period between November 15 and March 31 in "locations with protected bats." (Dkt. No. 339 at 28.) It also noted that "at least 20 miles[8] are affected by the bat restrictions, but the number of miles could be *up to* 75." (*Id.* at 28 & n.17.) Terrys' counsel chose to ignore the "locations with protected bats" and "up to" language at the hearing on the contempt motions.

Additionally, on cross-examination by counsel for various landowners at the January hearing, Mr. Cooper gave more detail. He said that there were "about 16 miles of the pipeline" where "for certain" the trees had to be cut down before March 31. (*Id.* at 178.) There were another 50 miles where the portal surveys had not yet been conducted. (*Id.*) But he explained that there were a "couple of choices" as to how to proceed in the unsurveyed areas. (*Id.*) The "conservative approach"—and the one referenced by the court in its opinion at footnote 17[9]— would be to assume that the bats are there and clear trees by March 31. The other option would

---

[8] The court acknowledges that the portion of its opinion stating that "at least 20 miles were affected by the bat restrictions," was not entirely accurate. (Dkt. No. 339 at 28 & n.17.) The court should have stated either "close to 20 miles" or "about 16 miles," which were the two estimates given by Mr. Cooper. (*Id.* at 178.)

[9] The court notes that it did not list all of MVP's options, or capture the entirety of Mr. Cooper's testimony, in its description of the miles that could and could not be surveyed, by what methods, and when. (*Compare id. with* Day 1 Hr'g Tr. at 176–80.) Since there was a focus on the March 31, 2018 date at the January hearing, it is understandable that there could be confusion regarding the breadth of the parcels subject to the March 31, 2018 tree-felling deadline. Regardless, though, the March 31, 2018 date as it relates to bats was not the only—or even the primary—basis for the court's grant of immediate possession, as explained more fully in the opinion. (Dkt. No. 339 at 27–34.)

9

be to survey (since mist and net-catching were not allowed) and if "it turns out that there are no portals [on a tract], then you can be afforded this expanded window for the bats [*i.e.*, April and May], as long as you're far enough away from other portals that existed." (*Id.* at 123, 177–78.) Notably, there was no evidence regarding which tracts were bat-protected tracts, and there was certainly no evidence that the Terrys' properties were bat-protected properties.

Furthermore—and more importantly for purposes of this proceeding—the court's description of a witness's testimony about when tree felling could and could not occur pursuant to various guidelines is not the equivalent of a command or a directive to MVP about when it could or could not fell trees. Those determinations are made by FERC, based on its interpretation of MVP's compliance with the FERC certificate and its subsequent instructions. As the court referenced repeatedly in that same opinion, in Natural Gas Act condemnation cases like this, the court has a limited role of ordering condemnation as authorized by the FERC certificate. (*Id.* at 5; *see also id.* at 20–21 (collecting authority holding that a certificate-holder's failure to comply with FERC conditions does not affect its ability to exercise eminent domain); *id.* at 17–18 n.11 ("compliance with any condition in the certificate is an issue for FERC, not this court").) Because the Terrys have not shown clearly and convincingly that MVP violated an *order* of this court, they have failed to establish the third element of their contempt claim.

Having held that MVP did not violate a court order, there is logically no harm caused by any violation, so they have failed to satisfy the fourth element, as well. The Terrys' cross-motion for contempt will be denied.

10

## C. Contempt Allegations Against Coles Terry

The court now turns to MVP's motion for contempt.

With regard to the contempt allegation against Coles Terry, the first element is conceded by him, *i.e.*, that he had actual knowledge of a valid court decree—the orders of immediate possession over both parcels, which plainly prohibited him from "delaying, obstructing, or interfering with access to or use of the Easements by MVP or its agents, servants, employees, or contractors." (Dkt. Nos. 592, 593.) The second element, as noted above, has been established. The order was in MVP's favor.

The third element has also been shown by clear and convincing evidence. Despite being a party to the underlying action and bound by the court's order, Coles engaged in behavior that, coupled with the actions of his wife and daughter, has delayed, obstructed, and interfered with MVP's use of the Easements. Coles has readily admitted that he provided both physical support and emotional support and encouragement for Red and Minor to be in, and stay in, their tree stands. For example, he testified that he provided food and drink to his wife and daughter in the tree stands from the time they went up in the tree stands until April 12, 2018, when the Roanoke County Police cordoned off the area. He gave advice to at least one person building the tree stands regarding how best to secure them to the tree. And he admitted that he assisted Minor with either carrying or placing a ladder to help her get up to her tree stand. Despite being the landowner of the property where the Easements lie, he conceded that he has never told Red or Minor to come down from the tree stands; rather, he has visited them regularly and told them both that they are doing a good job. He further vows to continue to support them. In his own words, as shown in one of the videos admitted into evidence: "My wife and my daughter are fully prepared to be up there for the long run. They're there to stay, they're there to fight this

11

thing, and I'm there to support them any way I can." In summary, he has offered both material assistance and encouragement to two people who are actively interfering with MVP's ability to conduct its construction activities on the Easements located on his parcels.

Similar conduct by persons subject to an injunction, which resulted in a clear violation by non-parties, warranted contempt sanctions. *See, e.g.*, *Roe v. Operation Rescue*, 54 F.3d 133, 138–39 (3d Cir. 1995) (reversing district court where it failed to enter a contempt order against a party who, although he was not present and did not participate directly in a blockade that violated the injunction, gave a speech encouraging others to attend and helped to organize, publicize, and raise money to support the blockade); *see also Regal Knitwear*, 324 U.S. at 14 ("[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."). Clear and convincing evidence of Coles's violations has been shown.

Coles argues that it was not his idea for his wife and daughter to go up into the tree, and thus at most, he was aiding and abetting them, not the other way around. But nothing in Rule 65(d) or in any case identified by the Terrys requires the initiation of the violation to come from the party, as opposed to the non-party. Rule 65(d)(2)(C) refers to "active concert" or participation, and that is satisfied here. Thus, the fact that it was originally Red's or Minor's idea to occupy a tree stand within MVP's easements on Coles's properties does not absolve him of his obligation not to violate the court's order. And by working in active concert with them, he has violated it. Although he tries to couch his conduct as simply being a supportive husband and father, his encouragement and material and emotional support of their presence in the tree stands violates the injunction entered against him. *See Roe*, 54 F.3d at 138–39. Thus, the court concludes that MVP has established the third element by clear and convincing evidence.

As to the fourth element of its civil contempt claim, MVP presented clear evidence of harm from the violations. It offered a number of examples. At a minimum, MVP incurred delay charges that it had to pay to the contractors who were felling trees on the Terry parcels on April 12, an amount of approximately $5,800. There was also undisputed testimony that MVP had to pay two specialty climbing crews to fell trees near or around the tree stands and a witness testified that MVP will incur additional costs to mobilize the full crew back to the area a second time to cut the balance of the trees (which, together with the $5,800 above, resulted in a total cost of incremental work on account of the tree sitting of about $15,200). MVP witnesses also testified that it incurred costs to survey the location of the tree stands to confirm they were within the Easements (in the amount of $4,300) and to maintain security around the two sites ($21,600 per site through the date of the hearing). Additionally, MVP has incurred attorneys' fees in having to prosecute the contempt motion. Thus, the final element is established, too.

As a final note, applicable to Coles, Red, and Minor, the court is not convinced by the proffered explanation that they were acting to prevent what they believed would be a violation of the court's order by MVP, if it continued tree-felling after March 31. To the extent they are claiming that they were acting in a good faith belief that MVP's actions were unlawful and thus their actions were lawful and not contemptuous, the law is against them. Indeed, the intent of the Terrys is irrelevant to whether or not they violated the order. As the Fourth Circuit held in *McLean v. Central States*, 762 F.2d 1204 (4th Cir. 1985):

> Orders of the courts must be promptly complied with, absent a stay, for appeal is the remedy for decisions believed to be erroneous. *Maness v. Meyers*, 419 U.S. 449, 458–59 (1975). Hence, good faith alone does not immunize a party from a civil contempt sanction for non-compliance with a court order. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949).

*McLean*, 762 F.2d at 1210; *see also Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015) ("Willfulness is not an element of civil contempt."); *Omega World Travel, Inc. v. Omega Travel & Shipping Agencies, Inc.*, 905 F.2d 1530, 1990 WL 74305, at *2 (4th Cir. 1990) (unpublished table decision) (quoting *McLean*).[10] Put differently, "[a]n act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Thus, even if the Terrys' conduct was in "good faith" based on their belief that MVP's tree-felling was illegal, they are still liable for violating the clear prohibition in the court's March 7 orders.

In any event, even if "good faith" were a defense, the court does not find that the facts here support it. Instead, the overwhelming evidence before the court is that the Terrys' motivation was not to stop MVP from engaging in "unlawful" tree-felling after March 31, 2018, but to stop or delay the pipeline altogether and to stop or delay the cutting down of trees on the Terry parcels, regardless of the timing. There was convincing evidence, by the Terrys' actions and even in their own words, that they were engaged in a protest against the entirety of the pipeline and not just to ensure that MVP complied with a March 31, 2018 deadline.

Notably, there was not a single reference by any of the Terrys in the four news clips played in court in which they asserted that they were in tree stands so that MVP could not fell

---

[10] Although the Fourth Circuit previously recognized that a "good faith attempt . . . to comply" with an order can be a defense to a civil contempt order, *Consolidation Coal Co. v. Local 1702*, 683 F.2d 827, 831 (4th Cir. 1982), *McLean* appears to have rejected that proposition. Nonetheless, several lower courts and even the Fourth Circuit itself have continued to rely on a "good faith" defense, without mentioning *McLean*. *See Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 616 n.8 (D. Md. 2017) (collecting authority and discussing the issue). Even if *McLean* did not overrule *Consolidation Coal*, though, the formulation in *Consolidation Coal* was that "a good faith attempt . . . to comply" with the court's order could be a defense to contempt. That is not the contention here. The Terrys are not claiming that they tried not to interfere with MVP's rights to use its easement, but they were unsuccessful. To the extent they are trying to claim "good faith" at all, the Terrys are arguing that they prevented MVP's tree-felling because of their belief that their interpretation of the court's orders was correct, and so in "good faith" in that sense. That type of "good faith" seems to the court to fall squarely within *McLean*'s explanation as to why good faith is *not* a defense. 762 F.2d at 1210 ("Appeal is the remedy for decisions believed to be erroneous."). And *McLean* relied on *McComb*, which itself noted that an enjoined party could petition the court for modification, clarification, or construction, but when a party instead makes its "own determination of what the decree mean[s]," it acts at its own peril. 336 U.S. at 192.

14

trees after that date, or to stop MVP from violating a court order. To the contrary, Red said she was "hoping people will open their eyes and look at which kind of devastation [the pipeline] is going to do." She and Minor referenced the harmful effects on water, the possibility of a pipeline leaking and blowing up, the fact that a private company was putting "profit before people." Coles said they were "worried about the pipeline." Tellingly, in the April 2, 2018 Roanoke Times clip, Red was asked, "Did you ever think you'd be doing something like this?" She responded: "Yes, as soon as Mountain Valley approached us three years ago, I thought I'd be doing something like this." The Terrys are, of course, free to make these statements, but the statements are properly considered as evidence that contradicts their defense.

Moreover, there is also evidence that the stands were built and at least Red was in her stand at some point in March, which undermines their assertion that they were only trying to stop post-March 31 tree-felling. Thus, to the extent Coles (or Red or Minor) have asserted this argument as a type of "good faith" defense, the court also rejects it as unsupported by the evidence.

**D. Contempt Allegations Against Red and Minor**

Prior to turning to the elements of contempt as applied to Red and Minor, the court addresses briefly their contention that the court lacks personal jurisdiction over them, which was raised in their motion to reconsider the court's show cause order. (Dkt. Nos. 823, 828, 829 (briefing on motion).) The court denied that motion in a written order issued prior to the hearing (Dkt. No. 833), but their counsel argued again at the hearing that the court lacked jurisdiction over them.

As discussed herein, the court finds that Red and Minor have, in fact, worked together and with Coles to violate the court's injunction. Thus, they fall squarely within the class of

15

persons that are bound by an injunction. Federal Rule of Civil Procedure Rule 65(d)(2) provides that an injunctive order binds the following persons "who receive actual notice of it by personal service or otherwise":

> (A) the parties
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d).

Additionally, numerous courts have recognized that jurisdiction is proper over a nonparty who works in active concert with a party to violate an injunction. *See, e.g.*, *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014) (recognizing that other circuits have permitted the exercise of jurisdiction over "nonparties who, with knowledge of an injunction, intentionally aided in its violation"); *ClearOne Commc'ns, Inc., v. Bowers*, 651 F.3d 1200, 1215–16 (10th Cir. 2011) ("[A] district court may properly exercise personal jurisdiction over a nonparty for purposes of entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order."); *S.E.C. v. Homa*, 514 F.3d 661, 673–75 (7th Cir. 2008); *Waffenschmidt v. MacKay*, 763 F.2d 711, 718–19 (5th Cir. 1985) ("We agree with the Second Circuit and hold that a court may assert jurisdiction over persons who, with knowledge of the court's orders, actively aid and abet an enjoined party.")

As already explained above in addressing the claim against Coles, and for the same reasons, the court easily finds that Coles, Red, and Minor were in active concert or participation with one another. Thus, the authority above and Rule 65(d)(2) render Red and Minor subject to this court's jurisdiction.

Turning to the contempt elements, MVP has satisfied the first two elements as against Red and Minor. The first is conceded, and for similar reasons discussed with regard to Cole, the court finds that the orders granting immediate possession were in MVP's favor.

As to the third element, MVP has also shown, by clear and convincing evidence, that Red and Minor violated the court's order. The parties agree that Red's and Minor's tree stands are in the Easement boundaries, and MVP offered undisputed proof as to that fact and also as to the fact that construction crews were delayed in clearing trees due to the women's presence there. Furthermore, the evidence is clear that Red and Minor, on multiple occasions, stated that their intent is to stop the Mountain Valley Pipeline. Thus, it cannot be disputed that their conduct constitutes a violation of that order, in that they have delayed, obstructed, or interfered with "use of the Easements by MVP or its agents, servants, employees, or contractors." (Dkt. Nos. 592, 593.)

Additionally, for the same reasons already discussed with regard to Coles' contempt, MVP has established the fourth element of its contempt claim.

**E. Appropriate Remedy for the Contempt**

Having found all three Terrys in contempt, the court has broad discretion to fashion an appropriate remedy to coerce compliance with the terms of its injunction. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994); *United States v. Darwin Constr. Co.,* 873 F.2d 750, 756 (4th Cir. 1989). If the court elects to impose a fine, the purpose of the fine can be compensatory and/or coercive. *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947). Additionally, the court's order may include a period of time in which the contemnor may purge herself of the contempt and avoid any penalties, before beginning to assess a daily fine. *See, e.g., S.E.C. v. Dunlap*, 253 F.3d 768, 771 (4th Cir. 2001).

The ultimate remedy that MVP seeks is the ability to use and work on the area of its Easements unimpeded, which will require Red and Minor to come down from (or be removed from) the tree stands. That is the action that the court is seeking to enforce with its contempt sanctions. The court also concludes that the time-frame for purging their contempt should be relatively short, given the amount of time they have been there already and their stated intention to stay.

Accordingly, the court will give each woman until 11:59 p.m. on Saturday, May 5, 2018, to descend voluntarily from her tree stand and to leave the boundaries of MVP's Easements. Thereafter, beginning on Sunday, May 6, each will be fined $1,000 for each day that she remains in the tree stand, and the fines shall be payable to MVP to compensate it for a portion of the losses it has sustained. If either one should continue to occupy her respective tree stand after 11:59 p.m. on Thursday, May 10, 2018, the USMS will be authorized to arrest her, pursuant to specific conditions that the court sets forth in the accompanying order. An appropriate order will be entered to effectuate the court's ruling.

In terms of an opportunity to purge his contempt, Coles Terry is situated differently than Minor and Red because, at this point and after having worked with Red and Minor to violate the injunction, he cannot secure complete compliance with the court's prior order on his own. That is, he would now need the cooperation of both Red and Minor. Accordingly, the court believes that, as to Coles, a compensatory fine of $2,000, payable to MVP, is an appropriate sanction. The conduct of all three Terrys has caused damages to MVP, and this amount represents approximately one-third of the delay costs paid to contractors and incurred by MVP on April 12, 2018.

III.  CONCLUSION

The Terrys and many of their supporters have expressed their belief that the MVP project is ill-advised and a threat to their land and the area's water supplies.  Many landowners—and others—have engaged in lawful attempts to prevent or stop the construction of the pipeline, such as participating in FERC's application process and state board hearings, opposing MVP's motions in this action, requesting a rehearing from FERC, filing other lawsuits, appealing from various court orders, including the orders at issue here, and seeking stays of various court orders.  Some of these efforts remain pending.  As of this day, however, this court's prior orders stand, And the Terrys do not dispute that, as of this date, FERC has granted MVP permission to clear trees on the Easements on the Terrys' parcels.  The court understands that the Terrys and others are disappointed and frustrated with the situation.  But the Terrys have resorted to actions that clearly violate this court's order and MVP's rights under it.

Even if their conduct is viewed as a form of civil disobedience intended to focus the public's attention or to express their opposition to the project, those who disobey valid orders of a court should be prepared to face the consequences of doing so.  *Maness*, 419 U.S. at 458–59 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.  Persons who make private determinations of the law and refuse to obey an order generally risk . . . contempt even if the order is ultimately ruled incorrect.").  As Supreme Court Justice Felix Frankfurter ably expressed, "If one [person] can be allowed to determine for himself [or herself] what is law, every [person] can. That means first chaos, then tyranny." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 312 (1947) (Frankfurter, J., concurring).   Thus, the court will impose the sanctions described above to obtain compliance with its valid order.

MVP indicated a desire to recover attorneys' fees. The court will entertain a separate motion for attorneys' fees, with supporting documentation, if filed not later than May 31, 2018.

An appropriate order will be entered.

Entered: May 4, 2018.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge