IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 7:17-CV-00492-EKD |
| ) | |
| ) | |
| EASEMENTS TO CONSTRUCT, OPERATE, ) | |
| AND MAINTAIN A NATURAL GAS ) | |
| PIPELINE OVER TRACTS OF LAND IN ) | |
| GILES COUNTY, CRAIG COUNTY, ) | |
| MONTGOMERY COUNTY, ROANOKE ) | |
| COUNTY, FRANKLIN COUNTY, AND ) | |
| PITTSYLVANIA COUNTY, VIRGINIA, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES
AGAINST IAN E. REILLY AND CAROLYN E. REILLY

Plaintiff Mountain Valley Pipeline, LLC ("MVP"), by counsel, submits this memorandum in support of its motion for attorney's fees and expenses.

I. INTRODUCTION

MVP seeks an order directing defendants Ian E. Reilly and Carolyn E. Reilly ("Reillys") to reimburse the reasonable attorney's fees and expenses incurred by MVP in bringing contempt proceedings against the Reillys for violating the Court's order of May 8, 2018 ("Order"), granting MVP immediate access to easements on MVP Parcel Number VA-FR-076.01. Dkt. No. 658. The Court has already found the Reillys in

contempt, Dkt. No. 864, and reimbursement of MVP's attorney's fees and costs is a proper remedy for the Reillys' willful disobedience of the Order.

MVP's requested rate of $240 per hour is reasonable based on the prevailing market rate and the background and experience of MVP's counsel. The number of hours requested, 69.7, is likewise reasonable given the importance of the issue. Consequently, the Court should order the Reillys to reimburse MVP's reasonable attorney's fees in the amount of $16,728, and reasonable expenses in the amount of $1,814.74.

## II. PROCEDURAL BACKGROUND

In October 2017, the Federal Energy Regulatory Commission issued a certificate of public convenience and necessity for the construction and operation of the Mountain Valley Pipeline Project in West Virginia and Virginia ("Project"). *Mountain Valley Pipeline, LLC*, 161 FERC ¶ 61,043 (Oct. 13, 2017).

On October 24, 2017, MVP commenced this action pursuant to 15 U.S.C. § 717f(h) to condemn the easements needed for the Project that MVP could not acquire by agreement. Dkt. No. 1.

On January 31, 2018, the Court granted MVP a partial summary judgment confirming MVP's right to condemn easements along the approved route of the pipeline, including the easements on MVP Parcel Number VA-FR-076.01 (Easements"). Dkt. Nos. 339, 340. The Court also determined that MVP was entitled to immediate possession of the Easements upon posting security. *Id.*

After MVP posted the required security, the Court entered the Order granting MVP immediate possession of the Easements. Dkt. No. 658. The Order expressly prohibits any interference with MVP's access to or use of the Easements. *Id*.

In direct violation of the Order, MVP was denied access to and use of the Easements by tree-sitters occupying MVP Parcel Number VA-FR-076.01 ("Tract") within the limits of the Easements and preventing work there.

On April 19, 2018, counsel for MVP sent a letter to counsel for the owners of the Tract, the Reillys, and David J. Werner and Betty B. Werner ("Werners"), requesting that the owners take all necessary action to remove the tree-sitters from the Easements. Dkt. No. 791-1.

Also on April 19, MVP gave actual notice of the Order to the trees-sitters, and copies of the Order were posted in the area.

When the tree-sitters remained in the Easements, MVP filed a motion on April 20 to enforce the Order and hold the Reillys, the Werners, and the tree-sitters in contempt. Dkt. No. 791. The Court set the motion for hearing and ordered the Reillys, the Werners, and the tree-sitters to appear and show cause why they should not be held in contempt. Dkt. No. 813. The motion was briefed by MVP and the Reillys and Werners. Dkt. Nos. 840, and 844.

The Court held an evidentiary hearing on the motion on May 4. Dkt. No. 847. MVP, the Reillys, and the Werners all appeared with their counsel. If any of the tree-sitters were present, none made their presence known. The Court heard testimony from Carolyn Reilly, Ian Reilly, Marshall Robinson, Steve McGary, and Jeffrey

3

Klinefelter, and it received numerous admitted exhibits. Dkt. No. 847. The total time in court was approximately four hours. *Id.*

In its 18-page memorandum opinion of May 15, the Court rejected the Reillys' arguments that the motion for contempt is an improper SLAPP suit and not ripe for adjudication. Dkt. No. 863 at 8-10. Further, the Court held the Reillys in civil contempt for being in active concert and participation with the tree-sitters. *Id.* at 3, 11-15. The Court found that the Reillys' testimony denying knowledge of the violations was "purposefully evasive" and "sometimes blatantly misleading." *Id.* at 5. The Court assessed a fine of $1,000 against each of the Reillys, and stated it would entertain a separate motion for attorney's fees filed no later than June 14. *Id.* at 17-18; Dkt. No. 864 ¶¶ 2, 3.

The Court denied the motion to hold the Werners in contempt for lack of evidence of an affirmative act by the Werners taken in concert with the tree-sitters to violate the Order. Dkt. No. 863 at 3.

The Court denied without prejudice the motion to hold the tree-sitters in contempt, finding there was insufficient evidence that the tree-sitters currently in tree stands had received notice of the Order and show cause order. *Id*. at 16.

In this motion, MVP seeks to recover the attorney's fees and expenses incurred in obtaining the finding of contempt against the Reillys. Decl. of Wade W. Massie, ¶ 4 (Exhibit 1 to Motion).

4

III.  ARGUMENT

   A.  *The Reillys Willfully Disobeyed the Order*

The remedy for civil contempt includes ordering the contemnor to reimburse the complainant for its reasonable attorney's fees. *In re General Motors Corp.*, 61 F.3d 256, 259-60 (4th Cir. 1995); *Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015); *Summerville v. Local 77*, No. 1:06-cv-00719, 2008 WL 3983118, at *6 (M.D.N.C. Aug. 26, 2008). However, to award attorney's fees, the court must find that the contemnor has willfully disobeyed the order. *Omega World Travel, Inc. v. Omega Travel and Shipping Agencies, Inc.,* 905 F.2d 1530, 1990 WL 74305, at *4 (4th Cir. 1990); *Allen Corp. of Am. v. Zayas*, No. 14-cv-3719, 2016 WL 9725927, at *1 (D. Md. July 21, 2016); *Summerville*, 2008 WL 3983118, at *6; *Lane v. Prima Marketing, LLC*, No. 5:04-cv-1242, 2008 WL 793642, at *7 (S.D. W. Va. Mar. 20, 2008).

As described in the Court's memorandum opinion, the Reillys' conduct clearly constitutes willful disobedience:

- The Reillys have provided the Tree-sitters (and possibly other people supporting them) with tents and a camper to stay in on the Tract, although outside the boundaries of the Easements. This obviously has facilitated the Tree-sitters' ability to prolong their stay in the Easements and given them an ability both to re-supply easily when they descend from the tree stands and to quickly return to the tree stands when desired.

- Chicken wire that came from the Reillys' farm is under burlap sacks wrapped around the trunks of trees where the tree stands are located, and is designed to prevent or interfere with tree-cutting.

5

- When a member of MVP's security team went to the Tract to give notice to the Tree-sitters to vacate the Easements and explained his purpose to Mr. Reilly, Mr. Reilly said something to the effect of, "We're here to stay." That itself indicates that Mr. Reilly does not simply cheer the Tree-sitters from the sidelines, but identifies with them (by use of the term "we") and implies that he continues to assist them in staying in the Easements.

- Mrs. Reilly approved the use of statements from both herself and Mr. Reilly on a Facebook page "[l]aunched," according to Mr. Reilly, as an "act of protection for[their] family's home, land and water." That page is designed, at least in part, to support and encourage the Tree-sitters and to raise money for them and for the Reillys. "Launch[ing]" a Facebook page with the clear intent of encouraging and obtaining broader financial and/or emotional support for the Tree-sitters is also assistance given directly to the persons who, by their continued presence after MVP has asked that they leave—a fact fully known to the Reillys—are interfering with MVP's use of the Easements.

- The statements approved by Mrs. Reilly also include the following quotation attributed to Mr. Reilly: "This is about choosing for ourselves when the fight is over. MVP thought we would just resign when pipeline tree clearing began. But the fight has just begun and we still believe we can stop this destructive project. We will win." Given the context of the statement on the page and its reference to the tree clearing, the "fight" clearly includes the occupancy of the tree stands. Once again, moreover, he is not only showing and encouraging support for the Tree-sitters, but identifying with them.

Dkt. No. 863 at 13.

Consequently, the Court may order the Reillys to reimburse MVP's reasonable attorney's fees incurred in bringing contempt proceedings against them.

B.    *Determining the Lodestar Amount*

Courts use a three-step process to determine an award of attorney's fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, a "lodestar" figure is determined by multiplying a reasonable hourly rate by the number of reasonable hours

6

expended. *Id*. Next, fees are deducted from the lodestar amount for any "unsuccessful claims unrelated to successful ones." *Id*. Finally, some percentage of the remaining amount is awarded, depending on the degree of success enjoyed by the movant. *Id*.

In determining a reasonable hourly rate and number of hours, the court is guided by: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the services rendered; (4) the attorney's loss of other employment by accepting the case; (5) the customary fee for the work; (6) the attorney's expectations at the outset of the work; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community; (11) the nature and length of professional relationship with the client; and (12) attorney's fees awards in similar cases. *McAfee*, 783 F.3d at 88 n.5 (listing factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Fees may be awarded for multiple attorneys where there is no unreasonable duplication of work. *E.g.*, *Hudson v. Pittsylvania Cty.*, No. 4:11-cv-43, 2013 WL 4520023, at *6 (W.D. Va. Aug. 26, 2013), *aff'd*, 774 F.3d 231 (4th Cir. 2014).

C. *The Requested Hourly Rate Is Reasonable*

The party seeking a fee award must show that the requested hourly rate is reasonable. *McAfee*, 738 F.3d at 91. In determining reasonableness, the court considers the prevailing market rate in the community where the court sits and the background and experience of the lawyer involved. *Id.*; *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d

7
Bristol: 771247-1

169, 179 (4th Cir. 1994); *Reed v. Department of Corrections, Va.*, No. 7:13-cv-00543, 2015 WL 2374193, at *2 (W.D. Va. May 18, 2015).

A fee applicant can meet its burden of proof by a declaration attesting to the reasonableness of the requested hourly rate and evidence of what the attorney "actually charged" his client. *E.g., Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009); *Rum Creek Coal*, 31 F.3d at 175; *Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir. 1987); *Atkins v. Virginia Dept. of Transp.*, No. 1:13-cv-00057, 2015 WL 858870, at *2 (W.D. Va. Feb. 27, 2015). Reasonableness can also be established by the rates approved in other cases and the court's own familiarity with the rates prevailing in the district. *E.g.*, *Rogers v. Summit Receivables*, No. 3:17-cv-0069, 2018 WL 1161144, at *4 (W.D. Va. Mar. 5, 2018); *Valdez v. Arm Wyn, LLC*, No. 7:14-cv-00263, 2015 WL 3661102, at *4 (W.D. Va. June 12, 2015).

MVP seeks reimbursement of the actual rate it is charged, $240 per hour. Decl. of Wade W. Massie, ¶ 4. MVP's counsel are principals in their law firm and have practiced law for more than 40 and 10 years respectively. *Id*., ¶¶ 1, 6. Their rate for this case is $240 per hour. *Id*., ¶ 2. The rate of $240 per hour is well within the prevailing market rate for attorneys with counsels' education, training, and experience. *Id*., ¶ 7; Decl. of Matthew P. Pritts, ¶ 4 (Exhibit 2 to Motion).

Moreover, rates in excess of $240 per hour are regularly approved in the Western District. *Brown v. Mountainview Cutters, LLC*, 222 F. Supp. 3d 504, 513 (W.D. Va. 2016) (approving hourly rates of $350 for partner and $225 for associate in Roanoke Division); *Nationwide Prop. & Cas. Ins. Co. v. Jacobsen*, No. 7:14-cv-00516, 2015 WL

7302443, at *2 (W.D. Va. Nov. 18, 2015) (approving hourly rates of $300, $250 and $210 in Roanoke Division based on court's "experience and knowledge of fees generally charged by attorneys in the Roanoke area"); *Valdez*, 2015 WL 3661102, at *4 (approving hourly rate of $250 in Roanoke Division based on court's "knowledge of the market"); *Reed*, 2015 WL 2374193, at *3 (approving $300 hourly rate in Roanoke Division); *Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*, No. 7:11-cv-00025, 2014 WL 1599564, at *4 (W.D. Va. Apr. 21, 2014) (approving blended hourly rate of $332.29 in Roanoke Division based on the court's knowledge of the fees charged by attorneys in the Western District and Roanoke Division). *See also Griffin v. Areva, Inc.*, No. 6:16-cv-29, 2016 WL 7736953, at *2-3 (Dec. 15, 2016) (recommending approval of hourly rates of $375 for partner and $250 for associate in Lynchburg Division based on court's knowledge of "the Lynchburg legal market"), *report and recommendation adopted*, 2017 WL 121073 (W.D. Va. Jan. 12, 2017); *Hudson*, 2013 WL 4520023, at *4 (approving hourly rate of $350 in Danville Division based on the court's knowledge of the rates charged in Danville area); *Atkins*, 2015 WL 858870, at *3 (approving $300 hourly rate in Abingdon Division).

Consequently, the Court should approve the requested rate of $240 per hour.

### D. The Requested Hours Are Reasonable

In determining the reasonable number of hours, the court considers the specific tasks involved, whether those tasks would normally be billed to a paying client, and the potential duplication of services. *E.g., Hudson*, 2013 WL 4520023, at *4. The

9

Court must also weigh the hours claimed against its own knowledge, experience, and expertise of the time required to complete similar activities. *Id*.

The number of hours requested by MVP, 69.7, is reasonable. Decl. of Matthew P. Pritts, ¶ 4; Decl. of Wade W. Massie, ¶ 8. Time was of the essence for MVP to have access to the Easements to avoid skip-around and delay costs. Decl. of Wade W. Massie, ¶ 8; Transcript of Hearing on May 4, 2018, at 100. The motion involved briefing, preparing examinations, exhibits, and arguments for the hearing, travel time, and approximately four hours of court time. Decl. of Wade W. Massie, ¶ 8; Dkt. No. 847.

Consequently, the lodestar amount is $16,728 (69.7 hours x $240).

### E. There Should Be No Downward Adjustment

The lodestar amount should not be reduced because there are no unsuccessful claims unrelated to the successful claim against the Reillys. *McAfee*, 738 F.3d at 88 (providing for subtraction of hours spent on unsuccessful claims unrelated to successful ones). The claims against the Werners and tree-sitters share a common core of facts and legal theory with the claim against the Reillys—interference with MVP's Easements in violation of the Order. All of the time to prosecute the motion against the Reillys would have been necessary even if the Werners and tree-sitters had not been parties. Decl. of Wade W. Massie, ¶ 5. Consequently, there should be no deduction of fees. *E.g., Eschert v. City of Charlotte*, 3:16-cv-295-FDW-DCK, 2017 WL 3840275, at *4 (W.D.N.C. Sept. 1, 2017) (declining to deduct fees for unsuccessful claims that were related to successful claims), *appeal dismissed*, No. 17-2104(L), 2017 WL 8293616 (4th Cir. Nov. 3, 2017); *Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. 13-cv-1888,

10

2016 WL 6634856, at *1 (D. Md. Nov. 8, 2016) (declining to deduct fees for unsuccessful claims against defendant dismissed from the case that were related to successful claims).

The entire lodestar amount should be awarded because MVP obtained a contempt finding against the Reillys and the proceedings laid the groundwork for the subsequent finding of contempt against the tree-sitters (Dkt. No. 898). *McAfee*, 738 at 88 (stating that the award of a percentage of the remaining lodestar amount should be based on the degree of success enjoyed by the movant).

### F. MVP's Expenses Are Reasonable

The remedy for civil contempt includes ordering the contemnor to reimburse the complainant for its reasonable expenses. *E.g., Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 134, 138 (4th Cir. 1994); *Matter of Grand Jury Subpoena of June 12, 1986*, 690 F. Supp. 1451, 1455, 1457 (D. Md. 1988).

MVP seeks to recover the reasonable travel, hotel, conference room, and court reporter expenses, in the total amount of $1,814.74, it incurred in the condemnation proceedings against the Reillys. Decl. of Wade W. Massie, ¶ 4 and Exhibit A. All of the expenses claimed by MVP are being billed to MVP. *Id.*, ¶ 4.

### IV. CONCLUSION

For the foregoing reasons, the Court should order the Reillys to reimburse MVP's reasonable attorney's fees in the amount of $16,728 and reasonable expenses in the amount of $1,814.74.

11

Respectfully submitted,

MOUNTAIN VALLEY PIPELINE, LLC

By Counsel

Stephen M. Hodges
 VSB No. 1220
Wade W. Massie
 VSB No. 16616
Mark E. Frye
 VSB No. 32258
Seth M. Land
 VSB No. 75101
PENN, STUART & ESKRIDGE
P. O. Box 2288
Abingdon, VA  24212
Telephone:  276-628-5151
Facsimile:  276-628-5621
shodges@pennstuart.com
wmassie@pennstuart.com
mfrye@pennstuart.com
sland@pennstuart.com

By  */s/ Wade W. Massie*
        Wade W. Massie

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of June, 2018, the foregoing memorandum was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record. I also certify that I have mailed a copy of this motion to the following parties who have appeared pro se:

>Elijah Howard
>Kristin Howard
>2219 Willis Hollow Road
>Shawsville, VA  24162
>
>Delmer Wayne Howard
>2740 Reese Mountain Road
>Elliston, VA  24087

                                                */s/ Wade W. Massie*
                                                  Wade W. Massie

Bristol: 771247-1