IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EASEMENTS TO CONSTRUCT, )<br>OPERATE, AND MAINTAIN A )<br>NATURAL GAS PIPELINE OVER )<br>TRACTS OF LAND IN GILES COUNTY, )<br>CRAIG COUNTY, MONTGOMERY )<br>COUNTY, ROANOKE COUNTY, )<br>FRANKLIN COUNTY, AND )<br>PITTSYLVANIA COUNTY, VIRGINIA, *et* )<br>*al.*, )<br>)<br>Defendants. ) | Civil Action No. 7:17-cv-00492<br><br>By:  Elizabeth K. Dillon<br>       United States District Judge |

**MEMORANDUM OPINION**

This matter comes before the court on Mountain Valley Pipeline, LLC's (MVP) motion for an award of attorney's fees and expenses against John and Jane Doe Tree-sitters. (Dkt. No. 929.)  On May 28, 2018, the court found the Tree-sitters in contempt of the court's order granting MVP access to easements to facilitate their pipeline project. (Dkt. No. 898.)  MVP seeks fees and expenses incurred in bringing the contempt motion. The Tree-sitters did not respond to this motion.

For the reasons stated below, MVP's motion will be granted.

I.  BACKGROUND

On January 31, 2018, the court granted MVP partial summary judgment which confirmed its right to condemn easements along the approved route of the pipeline project, including the easements on MVP Parcel No. VA-FR-076.01.  (Dkt. Nos. 339, 340.)  After posting the required

security, the court entered an order granting MVP immediate possession of the easements. (Dkt. No. 658.) The order prohibits any interference with MVP's access to or use of the easements. (*Id.*)

In April 2018, MVP was denied access to and use of the easements by the Tree-sitters' occupation of the parcel. On April 19, 2018, counsel for MVP sent a letter to counsel for the owners of the tract (Ian and Carolyn Reilly and David and Betty Werner), requesting that the owners take all necessary action to remove the Tree-sitters from the easements. (Dkt. No. 791-1.) MVP also gave actual notice of the order to the Tree-sitters, and copies of the order were posted in the area.

When the Tree-sitters remained in the easements, MVP filed a motion to hold the Reillys, the Werners, and the Tree-sitters in contempt. (Dkt. No. 791.) The court set the motion for a hearing and ordered the Reillys, the Werners, and the Tree-sitters to appear and show cause why they should not be held in contempt. (Dkt. No. 813.) At the hearing, MVP, the Reillys, and the Werners all appeared with their counsel. None of the Tree-sitters made an appearance. The court held the Reillys in civil contempt for being in active concert and participation with the Tree-sitters and assessed a $1,000 fine against each of the Reillys. (Dkt. No. 863 at 3, 11–18; Dkt. No. 864.) The court denied the motion to hold the Werners in contempt for lack of evidence of an affirmative act by the Werners in concert with the Tree-sitters. (Dkt. No. 863 at 3.) Finally, the court denied without prejudice the motion to hold the Tree-sitters in contempt, finding there was insufficient evidence that the Tree-sitters currently in tree stands had received notice of the order and show cause order. (*Id.* at 16.)

MVP soon filed a second motion to enforce the injunction and to hold the remaining John Doe Tree-sitter, known as Ink, in contempt. (Dkt. No. 897 at 2; Dkt. No. 875.) The court issued

an order directing John Doe to show cause why he should not be held in contempt and to appear at the hearing schedule for May 28, 2018.  (Dkt. No. 885.)  A member of the United States Marshals Service posted the order on the tree where John Doe was located and read the order to him.  (Dkt. No. 897 at 2.)

On the morning of May 28, John Doe came down from his tree but another Tree-sitter, Jane Doe, climbed into a different tree.  (*Id.*)  Upon learning of this development, the court issued a revised show cause order to Jane Doe.  (Dkt. No. 892.)  A member of the Marshals Service read the revised show cause order to Jane Doe.  (Dkt. No. 897 at 2.)  Shortly before the hearing, Jane Doe came down from the tree.  (*Id.*)

MVP appeared with its counsel at the hearing.  (Dkt. No. 895.)  The Tree-sitters did not make an appearance or otherwise make their presence known.  After hearing testimony and receiving exhibits into testimony, the court held both Tree-sitters in contempt.  The court imposed a $5,000 fine against John Doe and a $1,000 fine against Jane Doe.  (Dkt. Nos. 897, 898.)

## II.  ANALYSIS

### A.  Willful Contempt

The appropriate remedy for civil contempt is within the court's broad discretion.  *In re GMC*, 61 F.3d 256, 259 (4th Cir. 1995).  "Remedies include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *Id.*  Attorney's fees for civil contempt are available in "exceptional cases" where the contemnor's conduct was "malicious, fraudulent, willful or deliberate in nature."  *Retail Serv. Inc. v. Freebies Publ'n*, 364 F.3d 535, 550 (4th Cir. 2004).

As the court explained in its order finding the Tree-sitters in contempt, the Tree-sitters treated these proceedings like a "game," using their "anonymity, coupled with the court's concerns over notice to them, as a tool to shield them from contempt." (Dkt. No. 897 at 2.) Such behavior included wearing masks to shield their identities. (*Id.* at 1 n.1.) On the day of the hearing, the John Doe Tree-sitter (Ink) came down from his tree and Jane Doe ascended into a different tree. (*Id.* at 2.) Then, shortly before the hearing began, Jane Doe came down from her tree; as a result, there was not "currently any Tree-sitter interfering with MVP's use of the Easements" once the hearing commenced. (*Id.*) Nonetheless, the court found that the Tree-sitters were familiar with the court's orders and would likely attempt to violate the court's order again. (*Id.*) In accordance with the court's reasoning in finding the Tree-sitters in contempt, the court finds that the conduct of the Tree-sitters in violating the court's order was willful and deliberate.

**B. Attorney's Fees**

Federal Rule of Civil Procedure 54(d)(2) provides that a "claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The Rule also sets out timing and content requirements for a motion for attorney's fees, all of which MVP has fulfilled. Fed. R. Civ. P. 54(d)(2)(B).

Courts use a three-step process to determine an award of attorney's fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the court must calculate the lodestar figure by multiplying the number of reasonable hours worked by a reasonable rate. *Id.* To determine these variables, the court applies the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See McAfee*, 738 F.3d at 88 (citing *Robinson v. Equifax Info.*

*Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)).[1]  Second, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones."  *Id.*  Finally, the court should award a percentage of the remaining amount "depending on the degree of success enjoyed by Plaintiff."  *Id.*

### 1. Reasonable rate

The fee applicant bears the burden of establishing the reasonableness of the hourly rate.  *McAfee*, 738 F.3d at 91.  "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits."  *Rum Creek Coal Sales Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).  Recent awards in similar cases are helpful in "shedding additional light on the rates."  *Supinger v. Virginia*, No. 6:15-cv-17, 2019 WL 1450530, at *3 (W.D. Va. Mar. 4, 2019).

MVP seeks reimbursement at the rate of $240 per hour for the work of two principal (as opposed to associate) attorneys on this motion.  (Declaration of Wade W. Massie ¶ 7 (Massie Decl.), Dkt. No. 929-1.)  The attorneys who worked on this motion have forty and ten years of legal experience, respectively.  (*Id.* ¶¶ 1, 6.)  This rate is within the prevailing market rate in this legal market for attorneys with this amount of education, training, and experience.  (*Id.* ¶ 7.)  Similar rates have been approved in the Roanoke division of this judicial district.  *See, e.g.*, *Nationwide Prop. & Cas. Ins. Co. v. Jacobsen*, No. 7:14-cv-00516, 2015 WL 7302443, at *2 (W.D. Va. Nov. 18, 2015) (approving hourly rates of $300, $250, and $210 based on the court's

---

[1] These factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions asked; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectation at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.  *Robinson*, 560 F.3d at 243–44.

"experience and knowledge of fees generally charged by attorneys in the Roanoke area"); *Valdez v. Arm Wyn, LLC*, No. 7:14-cv-00263, 2015 WL 3661102, at *4 (W.D. Va. June 12, 2015) (approving hourly rate of $250 in Roanoke Division based on the court's "knowledge of the market").

Therefore, the court concludes that $240 per hour is a reasonable rate.

### 2. Reasonable hours

MVP requests an award for 46.9 hours of work on the contempt motion. (Massie Decl. ¶ 8; Declaration of Matthew P. Pritts (Pritts Decl.) ¶ 4, Dkt. No. 929-2.) The work involved drafting the motion, preparing examinations, exhibits, and arguments for the hearing, travel time, and over an hour of court time. (Massie Decl. ¶ 8.) Regarding the first *Johnson* factor (time and labor expended), the court finds 46.9 hours to be a reasonable amount of time to spend working on this motion based on the court's "knowledge, experience, and expertise of the time required to complete similar activities." *Hudson v. Pittsylvania Cty.*, No. 4:11-cv-43, 2013 WL 4520023, at *4 (W.D. Va. Aug. 26, 2013) (quoting *Johnson*, 488 F.2d at 717). There was no excessive duplication of time between the two attorneys. (Massie Decl. Exs. A, B.) Where there is overlap (for example, in preparation for and attending the contempt hearing), duplication is reasonable. *See Hudson*, 2013 WL 4520023, at *6. Further, MVP was under a time constraint (seventh *Johnson* factor) in gaining access to the easements to avoid skip-around and delay costs. (Dkt. No. 897 at 4.)

Therefore, the lodestar amount for an award is $11,256 (46.9 hours * $240).

### 3. No reduction

The court will not reduce the award because there were no unsuccessful claims. MVP was completely successful in obtaining a finding of contempt against the Tree-sitters. The total award of attorney's fees will be $11,256.00.

## C. Expenses

The remedy for civil contempt includes an order for reimbursement of reasonable expenses. *See Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 134, 138 (4th Cir. 1994); *Matter of Grand Jury Subpoena of June 12, 1986*, 690 F. Supp. 1451, 1455 (D. Md. 1988). MVP seeks to recover $647.98 in travel, hotel, and meal expenses incurred in bringing contempt proceedings against the Tree-sitters. The court finds that this is a reasonable amount.

## D. Division of Award

As set forth in Exhibits A and B to the Massie Declaration, the time spent on proceedings related to John Doe was 37.9 hours, and the time spent on proceedings related to Jane Doe was 9 hours. Therefore, John Doe will be ordered to reimburse MVP $9,096.00 in attorney's fees, and Jane Doe will be ordered to reimburse MVP $2,160.00 in attorney's fees. John Doe and Jane Doe should each reimburse MVP for $323.99 in expenses (half of the total).

## III. CONCLUSION

Based on the foregoing, MVP's motion for attorney's fees and expenses (Dkt. No. 929) will be granted. The court will enter an appropriate order.

Entered: May 21, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge